**LiLaw Inc.**, a Law Corporation
J. James Li, Ph.D. (SBN 202855, lij@lilaw.us)
5050 El Camino Real, Suite 200
Los Altos, California 94022
Telephone: (650) 521-5956
Facsimile: (650) 521-5955

Attorneys for Plaintiff Zhiyuan Miao, aka Mike Miao

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHIYUAN MIAO, a.k.a., MIKE MIAO,<br><br>        Plaintiff,<br><br>    vs.<br><br>PREFERRED RESTAURANT BRANDS, INC. (formerly known as KCI INVESTMENT LLC); KCI RESTAURANT II LLC; KENNETH ANTOS; XINMIN LIU (a.k.a. MIKE LIU); RICHARD GROBERG; and DOES 1-20, inclusive,<br><br>        Defendants. | **COMPLAINT FOR IMMIGRATION FRAUD, INVESTMENT FRAUD, ILLEGAL SALES OF SECURITIES, BREACH OF FIDUCIARY DUTY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, UNFAIR COMPETITION, AND RESCISSION OF SUBSCRIPTION AGREEMENT**<br><br>**DEMAND FOR JURY TRIAL** |



COMPLAINT

Plaintiff Zhiyuan Miao ("Plaintiff"), by and through his attorneys of record, hereby complains and alleges against Defendants Preferred Restaurant Brands, Inc. ("PRB"), the successor in interest to KCI Investment LLC ("KCI"), KCI Restaurant II LLC ("KCIRII"), Kenneth Antos ("Antos"), Xinmin Liu ("Liu"), Richard Groberg ("Groberg"), and Does 1 through 20 (collectively "Defendants") as follows:

## PARTIES AND NATURE OF ACTION

1. Plaintiff is an individual residing in Fremont, California.

2. On information and belief, Defendant PRB is a corporation organized under the laws of the State of Florida with the principal business address at 4033 S. Dean Martin Drive, Las Vegas, NV 89103. PRB is the successor in interest of KCI Investment LLC ("KCI") through a reverse merger.

3. On information and belief, Defendant KCIRII is a Delaware limited liability company which is controlled and managed by PRB as its managing member.

4. On information and belief, Defendant Antos is the Chairman and Chief Executive Officer of PRB.

5. On information and belief, Defendant Liu is a consultant of PRB and is also a member of PRB's Board of Directors.

6. On information and belief, Defendant Groberg was at all relevant times the Chief Financial Officer of PRB.

7. This is an action for immigration fraud, investment fraud, illegal sales of securities, breach of fiduciary duty, intentional infliction of emotional distress, unfair competition, and rescission of subscription agreement.

## JURISDICTION AND VENUE

8. This Court has personal jurisdiction over Defendant PRB as PRB (through KCI) solicited Miao, a California resident, into a fraudulent investment transaction for PRB's benefit.

9. This Court has personal jurisdiction over Defendant KCIRII as KCIRII participated in the solicitation of Miao, a California resident, into a fraudulent investment transaction for the benefit of itself and its affiliated companies.

10. This Court has personal jurisdiction over Defendant Antos because he frequently visited the California locations of PRB's restaurants and he committed intentional torts on a California resident which is part of the claim of the case.

11. This Court has personal jurisdiction over Defendant Liu who resides in Fremont, California.

12. This Court has personal jurisdiction over Defendant Groberg as he has committed serious intentional torts directed at a California resident.

13. On information and belief, Antos and Groberg ignored the separate entities that they established for the EB-5 projects and comingled funds among the entities, including the fund that Plaintiff placed in Defendant KCIRII. The limited liability company veil of KCI and KCIRII, as well as the corporate veil of PRB, thus shall be pierced and the companies should be viewed as the alter egos of Antos and Groberg.

14. The venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District.

15. This Court has subject matter jurisdiction over the immigration fraud claim, as the resolution of claim involves significant federal questions arising under federal immigration statutes.

16. This Court has subject matter jurisdiction over the claims for investment fraud and illegal sales of securities that are based on federal security laws.

17. This Court has supplemental jurisdiction over state law claims.

## GENERAL ALLEGATIONS

18. Plaintiff is a Chinese citizen who graduated from the University of Utah with a Bachelor of Arts degree in Economics and a Master of Science in Finance. After graduation, Plaintiff



stayed in California on an H-1 visa. In 2013, Plaintiff was invited by Defendant Liu to participate in an EB-5 immigration visa program.

19. The federal EB-5 immigration visa program allows a foreigner to obtain his or her Permanent Residency in the United States, which is popularly referred to as the Green Card, by investing $500,000 in special areas called "targeted employment area" where the investment will directly or indirectly create ten fulltime jobs locally within the targeted employment area.

20. Liu represented to Plaintiff that a law firm (the "Firm") had an ongoing immigration program and took Plaintiff to the Firm's San Francisco office to meet with a lawyer from the Firm on or about October 8, 2013. The idea of investing in KCI's Capriotti's Sandwich Shop for EB-5 visa was presented to Plaintiff by the lawyer during that first meeting.

21. On October 18, 2013, Liu sent Plaintiff an email, touting the credentials of the Firm on EB-5 matters and further introducing an immigration lawyer of the Firm. Liu then continued to act as Plaintiff's agent to communicate with the Firm and Plaintiff regarding the EB-5 project based on KCI's Capriotti's Sandwich Shops. On February 19, 2014, the Firm sent Plaintiff the Private Placement Memorandum and Subscription Agreement for the EB-5 security offering by KCI and KCIRII (the "Offering") based on KCI's Capriotti's Sandwich Shops. KCI is listed as the managing member of KCIRII, the issuer of the securities in the Offering.

22. Subsequently, on April 8, 2014, accompanied by Liu, Plaintiff went to the Firm's office in Orange County, California, to meet with two lawyers of the Firm, and another individual. This individual was used by the Firm as an encouragement for Plaintiff to invest in the EB-5 projects with KCI. On information and belief, this individual invested $1 million dollars with KCI for her EB-5 petition. At the Firm's office in Orange County, the parties had in-depth discussions of using KCI's Capriotti's Sandwich Shops under KCIRII as the sponsor of Plaintiff's EB-5 petition. The Firm again presented Plaintiff with a set of documentation for the proposed EB-5 investment, including the Private Placement Memorandum, the Subscription Agreement and other documents. Plaintiff was also led on a tour of a newly-opened Capriotti's Sandwich Shop nearby.

23. On April 15, Liu accompanied Plaintiff to Las Vegas for a site visit to KCI at 4033 Dean Martin Dr., Las Vegas, NV 89103. Then they visited one of KCI's restaurants. At the company,



1  Liu and Plaintiff were met by Defendants Antos, Groberg and senior VP Herb Press. Press showed
2  Plaintiff the construction plans for the two Capriotti's restaurants of KCIRII in the Las Vegas area.
3  These two restaurants, plus a third restaurant that had already been opened, were presented to
4  Plaintiff as the entities that would generate at least 20 new fulltime jobs to support the EB-5
5  applications of Plaintiff and another EB-5 investor.

6       24.     After the teleconference with the Firm immigration lawyer, Plaintiff decided to move
7  forward with his EB-5 investment with KCI / KCIRII. On April 30, 2014, Liu took Plaintiff to
8  Tijuana, Mexico to sign the Subscription Agreement for the Offering. Liu told Plaintiff that they must
9  sign the Agreement outside of the United States to comply with certain U.S. laws. Under the
10 Subscription Agreement, Plaintiff paid $500,000 as the capital contribution (the "Capital
11 Contribution") to KCIRII plus an administrative fee of $60,000 (the "Administrative Fee"). The
12 Administrative Fee was supposed to be used to pay expenses for Plaintiff's EB-5 petition, including
13 immigration lawyers' fees for the petition. The Firm acted as the corporate and security counsel for
14 KCI and KCIRII for the security Offering. Plaintiff initially paid KCI $100,000 to start the EB-5
15 project, and paid the remaining $460,000 to KCI sometime before May 30, 2014.

16      25.     Meanwhile, on or about May 15, 2014, Plaintiff signed a formal engagement letter
17 with the Firm for his EB-5 petition matter.

18      26.     Shortly after Plaintiff's payment of the investment to KCI, on or about June 4, 2014,
19 KCI closed its merger with Dixie Foods International, Inc. ("Dixie Foods"), a public company traded
20 on the over-the-counter market. According to Form 8-k filed by Dixie Foods on June 10, 2014, the
21 merger was a reverse merger, with KCI's parent company KCI Holding 1, LLC selling 100% of
22 KCI's membership interest to Dixie Foods in exchange for 96% of outstanding shares of Dixie
23 Foods. Through the reverse merger, Antos became the Chief Executive Officer and Chairman of the
24 Board of Dixie Foods, and Groberg became its Chief Financial Officer. Dixie Foods later changed its
25 name to PRB. The merger closed on June 4, 2014, pursuant to a purchase agreement signed on April
26 13, 2014. Under the purchase agreement, KCI agreed to pay certain shareholders of Dixie Foods an
27 aggregate share purchase price of $153,141 as part of the consideration for the merger.
28



27. On information and belief, PRB did not use Plaintiff's EB-5 investment to establish restaurants and create 20 fulltime jobs as it promised, but used the money for other purposes including, but not limited to, the reverse merger with Dixie Foods. PRB thus could not provide the necessary support for the required creation of at least 10 fulltime jobs in a targeted employment area as contemplated by the parties' agreement pursuant to the EB-5 investment Offering.

28. For more than a year after Plaintiff had made the commitment in the EB-5 project, by signing the Subscription Agreement and by rendering payment accordingly, the Firm did not do much at all to advance Plaintiff's EB-5 petition. On information and belief, the Firm never tried to work with PRB to come up with a suitable business plan that outlines in detail how 10 permanent jobs will be created using Plaintiff's investment in a targeted employment area. On information and belief, the Firm never tried to engage an economist who could render an independent opinion based on the business plan of PRB that at least 10 permanent jobs would be created through Plaintiff's investment in PRB and KCIRII. Both the business plan and the economist report are necessary to support Plaintiff's EB-5 petition. All the Firm did during this period of more than a year was collect some documents from Plaintiff to show the legality of the investment money.

29. On or about June 2, 2015, Plaintiff received a disengagement letter from the Firm, stating that the Firm was withdrawing from representing Plaintiff because the "withdrawal is necessary and appropriate given [the Firm's] internal compliance procedures and potential legal conflicts."

30. Before the Firm's withdrawal, Plaintiff had repeatedly asked Liu about the status of his case, and he was always assured that the case was moving forward in the normal course. When Plaintiff directly made inquiry to the Firm regarding his case status, a Firm employee promised to check on the status for him, but never delivered on the promise. In fact, starting sometime in May 2015, the Firm completely stopped communicating with Plaintiff.

31. Plaintiff was very disturbed when he received the withdrawal letter from the Firm. Upon inquiry, Liu provided via text message to Plaintiff two alternative explanations for the Firm's withdrawal:

> (1) Because of the pressure from the SEC, the firm that represents the business that establishes the immigration project cannot at the same time represent the investor/immigrant; (2) the senior partner who is in charge of the law firm's Southern California division thinks the business of representing immigrants is not profitable and has decided to stop the business.

32. Liu also told Plaintiff via text message that the Firm had "stated that [Plaintiff]'s case was nearly finished."

33. Within a few days of receiving the disengagement letter from the Firm, On June 6, 2015, Plaintiff told Liu that he wanted to withdraw his EB-5 investment, which Liu said was fine. On June 9, 2015, Plaintiff wrote an email to Antos, copying Liu, to inform PRB of his decision to withdraw the EB-5 investment. Antos did not respond to the email until about a month later (see below). Instead, Liu called Plaintiff to tell him that the company was short of funds and that if Plaintiff insisted on withdrawing the investment, it would take some time before he could receive his refund. Liu also introduced Plaintiff to a new immigration lawyer and told him how good the lawyer was to encourage Plaintiff to continue the EB-5 project.

34. On or about June 12, 2015, Plaintiff received his EB-5 file folder from the Firm, so that he could pass the folder to the new immigration lawyer. To Plaintiff's horror and surprise, the file folder contained only the documents that he sent to the Firm, but nothing else. Plaintiff started to realize that he might have been taken for a ride by the Firm and PRB. He then further pressed Liu about his requested withdrawal.

35. On July 3, 2015, Liu told Plaintiff that he just had a meeting with Antos in Las Vegas. According to Liu, PRB was doing well but was short of cash as it was still trying to raise a new round of financing by converting the franchise sandwich restaurants to their own brand. Liu also said that according to the contract, Plaintiff might not be allowed to withdraw and that if Plaintiff was allowed to withdraw, it would take an indefinite length of time because of the financial situation of the company.

36. On July 5, 2015, Antos finally replied to Mr. Miao's email request on June 9 for withdrawal. Antos, however, did not respond to the withdrawal request, but merely promised to "put all of our resources behind getting [the EB-5 project] done for [Plaintiff]." On July 7, 2015, Plaintiff requested that Antos send him "audited financial statements of KCI II Restaurants." He also



communicated the same request to Defendant Groberg. On September 10, 2015, Plaintiff, through Liu, again requested the financial statements from Antos. In response, Antos promised to send the statements "Most likely on Monday or Tuesday sooner if possible." So far, no financial documents have been provided to Plaintiff.

37.  Because of the uncertainty of retrieving his investment, and because of Liu's promotion of the merits of the new immigration lawyer, Plaintiff decided to continue the EB-5 project with the new attorney, and signed the engagement letter on July 22, 2015. For over a month, however, PRB failed to pay the immigration attorney his initial retainer, despite all the promises from Messrs. Liu and Antos. So the new attorney refused to start working on the project. That was the straw that broke the camel's back. Plaintiff decided to engage counsel to pursue legal remedies.

## COUNT ONE
**False Promise under 8 U.S.C. 1153(b)(5)**
**(Against All Defendants)**

38.  Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

39.  Defendants falsely promised Plaintiff that his EB-5 visa application would be promptly filed with the U.S. Citizenship and Immigration Services ("USCIS"), including all the necessary papers to demonstrate Plaintiff's eligibility for a Green Card under the EB-5 program, which requires proof by a preponderance of evidence that Plaintiff's investment will create 10 fulltime jobs in a targeted employment area, as promulgated by the Immigration and Nationality Act, Sections 203(b)(5) [8 U.S.C. § 1153(b)(5)] and the corresponding implementation rules under 8 C.F.R. §§ 204.6 and 216.6.

40.  In reliance on that promise, Plaintiff paid PRB and KCIRII the Capital Contribution and the Administrative Fee (collectively "Plaintiff's Payment"). On information and belief, PRB has already paid the Firm and Liu for their "contribution" to securing Plaintiff's Payment.

41.  Defendants' promise was false, as Defendants never intended to honor the promise. No business plan was ever created to evidence the required creation of 10 permanent jobs in a targeted employment area. No economist was ever retained to provide an independent economic



report that the business plan indeed would create 10 permanent jobs. No paper was ever filed with the USCIS for over a year, before the Firm resigned as Plaintiff's immigration counsel.

42. In perpetrating the false promise, Defendants acted in collusion and conspiracy with one another, and thus are jointly and severally liable for the false promise.

43. Defendants acted knowingly and willfully in perpetrating the false promise.

44. Plaintiff has suffered significant damages caused directly by Defendants' false promise.

# COUNT TWO
### Misrepresentation under 8 U.S.C. 1153(b)(5)
### (Against All Defendants)

45. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

46. Defendants misrepresented to Plaintiff that KCI and KCIRII had a valid business plan that would hire at least 10 fulltime employees and was sufficient to support Plaintiff's EB-5 visa petition.

47. On information and belief, Defendants did not have such an investment plan. Instead, Defendants planned to use Plaintiff's investment to finance their existing business needs including but not limited to the planned reverse merger with Dixie Foods.

48. Defendant Liu, in collusion with the other Defendants, falsely represented to Plaintiff multiple times that Plaintiffs' EB-5 application was making good progress and was ready to be filed while in fact the Firm did not do anything about the case other than collect some documents from Plaintiff to prove the legality of Plaintiff's Payment.

49. Plaintiff relied on Defendants' misrepresentations and provided Plaintiff's Payment to KCIRII and KCI.

50. Plaintiff has been damaged in an amount to be determined at trial.

51. Defendants made the misrepresentations knowingly and willfully.

52. Defendants acted in collusion and conspiracy in perpetrating the misrepresentation.



## COUNT THREE
**Investment Fraud in Violation of 15 U.S.C. §§ 78j(b) & 77l(a)(2)**
**(Against All Defendants)**

53. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

54. Defendants made material misrepresentations and omissions in connection with the sales of the EB-5 investment security to Plaintiff, in violation of Section 10(b) of the Securities and Exchange Act of 1934 [15 U.S.C. § 78j(b)], and Rule 10b-5 of the SEC, as well as Section 12(a)(2) of the Securities and Exchange Act of 1933 [15 U.S.C. § 77l(a)(2)].

55. Every Defendant played a "speaking role" in the securities fraud. Liu was Plaintiff's agent and interacted with the Firm and KCI on Plaintiff's behalf on the EB-5 scheme. Antos and Groberg control KCI and KCIRII, and were the spokesmen for KCI and KCIRII for the Offering at issue in this case and directly interacted with Plaintiff to promote the EB-5 scheme.

56. Defendants made the material misrepresentation and omissions intentionally to defraud Plaintiff. The misrepresentations and/or false promises include for example without limitation: (1) KCIRII had two restaurants that either had been launched or were ready to be launched; (2) the two restaurant projects, together with a third restaurant owned by KCIRII that was already in operation, would employ at least 20 full-time employees to support two EB-5 applicants; (3) Plaintiff's Capital Contribution would be used by KCIRII to build and run the three restaurants; (4) Plaintiff's Administrative Fee would be used to pay the expenses (including attorney fees) for Plaintiff's EB-5 petition; and (5) Plaintiff's EB-5 petition would be filed promptly with reasonable diligence.

57. Plaintiff relied on the misrepresentations and false promises to participate in the EB-5 investment, and has suffered significant damages.

58. Defendants acted in collusion and conspiracy with one another to perpetrate the investment fraud.

## COUNT FOUR
**Illegal Sales of Securities under 15 U.S.C. 77l(a)(1)**
**(Against All Defendants)**



59. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

60. The Firm and its employees acted as both legal counsel and sales agents for KCI and KCIRII. The Firm advertises on the Internet about its EB-5 practices to solicit EB-5 investors for its clients including KCI and KCIRII. The Firm also uses "sales agents" like Defendant Liu to solicit EB-5 investors. The Firm and its agents used mail (including email) to advertise for the EB-5 securities Offering by PRB and KCIRII, and transmitted the Offering documents by mail to potential clients including Plaintiff. The documents transmitted to Plaintiff through mail included the Private Placement Memorandum which is the prospectus of the Offering (the "Prospectus").

61. The Offering was never registered with the SEC. The Prospectus states that the Offering was made pursuant to registration exemptions under Regulation S or Regulation D. Neither exemption, however, applies to Plaintiff. The relevant provision of Regulation S requires that the natural person investors being offered the securities are not U.S. residents, but Plaintiff has been a U.S. resident at all relevant times. Defendants even devised the scheme of taking Plaintiff to Mexico to sign the Subscription Agreement in the vain attempt to treat Plaintiff as a non-US resident to invoke the exemption under Regulation S.

62. Nor does Regulation D apply to Plaintiff. The relevant provision of Regulation D requires that the investors being offered the securities are accredited investors; but Plaintiff was not an accredited investor. Nor was there ever any proper Form D filed in compliance with Regulation D. Therefore, the sales of EB-5 securities to Plaintiff by the Firm, PRB and KCIRII are illegal under Section 5 and Section 12(a)(1) of the Securities and Exchange Act of 1933, 15 U.S.C. §§ 77e & 77l(a)(1).

63. Plaintiff is a direct purchaser of the illegal security sales while Defendants are the parties or their agents who sold the illegal securities to Plaintiff. Plaintiff seeks to rescind the Subscription Agreement and to recover Plaintiff's Payment, plus interest and damages, from Defendants.

## COUNT FIVE
**Investment Fraud under Cal. Corp. Code § 25401**



**(Against All Defendants)**

64. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

65. Defendants employed a scheme based on the EB-5 Program to defraud Plaintiff in violation of Cal. Corp. Code § 25401.

66. Defendants made material misrepresentations and omissions in connection with the sales of the EB-5 investment security to Plaintiff in the State of California in violation of Cal. Corp. Code § 25401.

67. Defendant engaged in a practice that uses the EB-5 visa as a bait to defraud Plaintiff in violation of Cal. Corp. Code § 25401.

68. Plaintiff has been damaged by Defendants' fraud.

69. Defendants acted in collusion and conspiracy in perpetrating the fraud. While Defendant PRB and KCIRII are the issuers who are directly liable for the investment fraud, the other Defendants acted as agents of the issuers in committing the investment fraud.

70. Defendants acted knowingly and willfully in perpetrating the investment fraud.

## COUNT SIX
**Breach of Fiduciary Duty**
**(Against All Defendants)**

71. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

72. PRB's predecessor KCI is the managing member of KCIRII, the entity that issued the EB-5 security to Plaintiff. Through the purchase of the security, Plaintiff became a limited member of KCIRII. Being the managing member of KCIRII, KCI thus owes a fiduciary duty to Plaintiff.

73. Antos and Groberg are managers of KCI, and the de facto managers of KCIRII through their management of KCI. Antos and Groberg thus owe fiduciary duty to Plaintiff.

74. Although Liu is a sales agent for the Firm's and KCI's EB-5 programs, Liu holds himself out to Plaintiff as Plaintiff's agent, acting apparently on behalf of Plaintiff to seek EB-5 investment opportunity. On information and belief, Liu received significant compensation from KCI

and/or the Firm for completing the investment by Plaintiff. As Plaintiff's agent, Liu owed fiduciary duty to Plaintiff based on California law on the relationship between agent and principal.

75. PRB, Antos, Groberg, and Liu breached their fiduciary duty to Plaintiff. They breached the duty of loyalty by defrauding Plaintiff through the EB-5 scheme and otherwise acting for their own gain in detriment to the interest of Plaintiff. They also breached the duty of due diligence by failure to use reasonable diligence to manage the affairs of Plaintiff that were entrusted to them based on the fiduciary relationship.

76. PRB, Antos, Groberg, and Liu breached their fiduciary duty knowingly and willfully.

## COUNT SEVEN
**Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

77. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

78. Defendants knew the amount of money that Plaintiff was placing in the EB-5 securities at issue was the life savings of Plaintiff and his parents, and that Plaintiff attached ultimate importance to the EB-5 investment and petition.

79. In participating in a fraud against Plaintiff to deprive the life savings of Plaintiff and his parents and to thwart his EB-5 visa plan, Defendants acted outrageously toward Plaintiff.

80. Defendants intended to cause extreme emotional distress or acted with reckless disregard of the probability that Plaintiff would suffer extreme emotional distress.

81. Plaintiff has suffered severe emotional distress directly caused by Defendants' conduct.

82. Defendants acted willfully, fraudulently, and maliciously.

## COUNT EIGHT
**Unfair Competition**
**(Against All Defendants)**

83. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.



84. Defendants' conduct is unlawful, unfair, and fraudulent business practices in violation of the unfair competition law of California, Cal. Bus. & Prof. Code § 17200.

85. Plaintiff has been injured by the Defendants' unfair competition.

## COUNT NINE

**Rescission of Subscription Agreement**
**(Against KCIRII)**

86. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

87. In purchasing the EB-5 security from KCI and KCIRII, Plaintiff signed a subscription agreement (the "Subscription Agreement") on or about April 30, 2014. The Subscription Agreement is invalid and unenforceable due to fraudulent inducement. The Subscription Agreement is also null and void for being an illegal contract in violation of Section 12(a)(1) of the Securities and Exchange Act of 1933. The Subscription Agreement is also voidable by Plaintiff due to KCIRII's utter failure to perform its duty under the agreement.

88. Plaintiff thus seeks the rescission of the Subscription Agreement and the return of his investment, together with interest and expenses that he incurred under Subscription Agreement, as well as other proper damages to be decided at trial.

## PRAYER FOR RELIEF

89. WHEREFORE, Plaintiff prays for relief against Defendants that the Court shall

   a. Enjoin Defendants from offering EB-5 programs;
   b. Award compensatory damages according to the proof;
   c. Award punitive and exemplary damages to deter similar wrongdoings;
   d. Award prejudgment interest at the maximum legal rate as allowed by the law;
   e. Award reasonable attorney's fees according to the proof;
   f. Award costs of suit herein incurred; and
   g. Award such other and further relief as the Court may deem proper.



# JURY DEMAND

90.     Plaintiff hereby demands a trial by jury on all issues so triable.


DATED:  December 3, 2015                **LiLaw Inc.**


                                        By   /s/ J. James Li
                                        J. James Li, Ph.D., Attorneys for Plaintiff
                                        Zhiyuan Miao, aka Mike Miao